UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SKYWATCHER, LLC
d/b/a/ QUALITY SOLAR, LLC,

      Plaintiff,                            Hon. Phillip J. Green

v.                                                Case No. 1:19-cv-409

GREGORY OLIVER, et al.,

      Defendants.
_____/

## OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 71). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Paul L. Maloney referred this case to the undersigned. For the reasons discussed herein, Defendants' motion will be granted in part and denied in part and this action terminated.

## BACKGROUND

Plaintiff Skywatcher, LLC (Skywatcher) initiated this action against: (1) Standard Solar, Inc.; (2) Richard Oliver; (3) Agathon Solar, LLC; and (4) Comprenew. In its Amended Complaint, (ECF No. 6), Plaintiff asserts the following:

As of December 15, 2017, Richard Oliver was employed by Skywatcher. On this date, Oliver and Skywatcher executed an agreement detailing the terms of Oliver's compensation for 2018. In January 2018, Skywatcher requested that Oliver execute a non-competition agreement (NCA). Oliver agreed to do so.

On January 9, 2019, Oliver resigned his position with Skywatcher. Prior to doing so, however, Oliver "removed" a laptop computer belonging to Skywatcher and delivered it to Comprenew. Oliver directed Comprenew to remove from this computer "information and data files." After resigning from Skywatcher, Oliver "removed" from Skywatcher's offices "written records" belonging to Skywatcher, including the NCA he previously executed. After resigning from Skywatcher, Oliver began working for Agathon Solar, LLC. In this capacity, Oliver "solicited customers and potential customers" of Skywatcher using information improperly obtained from Skywatcher. Oliver engaged in these activities with the knowledge and participation of representatives of Standard Solar.

Skywatcher later dismissed its claims against Comprenew and Standard Solar. (ECF No. 38, 77). With respect to Defendant Oliver, Plaintiff asserts two federal law claims and five state law claims. As for Defendant Agathon, Plaintiff asserts four state law claims. Defendants Oliver and Agathon now move for summary judgment. Plaintiff has responded to Defendants' motion.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodide*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.   Computer Fraud and Abuse Act (CFAA)**   (Count I)

In Count I of its amended complaint, Plaintiff alleges that Defendant Oliver took one of its computers and instructed Comprenew to "delete and remove files" therefrom with the intent to deprive Skywatcher from accessing such. Skywatcher asserts that Oliver's actions violated the Computer Fraud and Abuse Act (CFAA). *See* 18 U.S.C. § 1030 *et seq.*

While the CFAA is primarily a criminal statute, it also provides civil relief for violations thereof. *See* 18 U.S.C. § 1030(g). Plaintiff fails to specify in its complaint which provisions of the CFAA Defendant allegedly violated. In response to the

present motion, however, Plaintiff asserts that Defendant violated 18 U.S.C. §§ 1030(a)(2)(C) and 1030(a)(5)(C). (ECF No. 78, PageID.408). The former provision is violated when a person intentionally accesses a computer "without authorization or exceeds authorized access" and thereby obtains "information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The latter provision is violated when a person intentionally accesses a protected computer "without authorization" causing damage or loss. 18 U.S.C. § 1030(a)(5)(C).

Skywatcher concedes in its complaint that Oliver "was authorized to use" the computer in question "for business purposes." (ECF No. 6, PageID.33). The question, therefore, is whether the CFAA is violated when an employee misuses or misappropriates information that his employer has authorized him to access. While the Sixth Circuit does not appear to have addressed this question, a majority of district courts within the Circuit have concluded that the CFAA must be interpreted narrowly so as to preclude civil liability where an employee merely misuses or misappropriates information to which he was permitted access. *See, e.g., Wachter, Inc. v. Cabling Innovations, LLC*, 387 F.Supp.3d 830, 836-37 (M.D. Tenn. 2019); *Royal Truck & Trailer Sales and Service, Inc. v. Kraft*, 2019 WL 1112387 at *2-4 (E.D. Mich., Mar. 11, 2019). Courts have articulated several persuasive reasons in support of this approach.

First, the CFAA was enacted to "create a cause of action against computer hackers (e.g., electronic trespassers) as well as to protect computer owners against trespass." *Wachter*, 387 F.Supp.3d at 837 (internal citations omitted). As other

courts have noted, to permit an employer to recover against an employee for misusing or misappropriating information that he was authorized to use and/or access "would transform a criminal statute, initially intended to punish hackers, into a federal cause of action for a breach of the duty of loyalty." *Kraft*, 2019 WL 1112387 at *4.

Second, the fact that the CFAA is a criminal statute supports a narrow interpretation of the provisions at issue. A civil claim under the CFAA can be asserted only as to conduct that would likewise support a criminal prosecution. The rule of lenity cautions that an ambiguous criminal statute is interpreted in a defendant's favor. *See, e.g., United States v. Canal Barge Co., Inc.*, 631 F.3d 347, 353 (6th Cir. 2011). Because the rule of lenity limits the conduct which supports a criminal prosecution under the CFAA, "it likewise limits the conduct that will support a civil claim." *Wachter*, 387 F.Supp.3d at 838.

Finally, the language of the statute supports this approach. Plaintiff concedes that Defendant was authorized to access the computer in question. *See also, Kraft*, 2019 WL 1112387 at *3 (given its common meaning, the term "without authorization" does not apply to circumstances in which the plaintiff authorized the defendant to access the information in question). As for whether Defendant acted in excess of his authorized access, the CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the [person] is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Plaintiff does not allege that Oliver altered any information on the computer or accessed therefrom any information he was not authorized to

access. Instead, Plaintiff asserts that Oliver misappropriated information he *was* authorized to access.

In sum, Plaintiff cannot establish that Defendant Oliver acted in a manner that would subject him to civil liability under the CFAA. Accordingly, Oliver is entitled to summary judgment as to Count I.

## II. Theft or Misappropriation of Trade Secrets (Counts V and IX)

In Count V, Plaintiff asserts a state law claim for misappropriation of trade secrets against Defendants Agathon and Oliver. In Count IX, Plaintiff asserts a claim under federal law against Defendant Oliver for theft of trade secrets. Because the analysis regarding both is "largely identical," *FCA US LLC v. Bullock*, ___ F.Supp.3d ___, 2020 WL 1234893 at *7 (E.D. Mich., Mar. 13, 2020), the Court will analyze these claims together.

Defendants argue that they are entitled to relief because Plaintiff has failed to present evidence that they stole or misappropriated any information properly characterized as a trade secret. The Court agrees. Specifically, as discussed below, Plaintiff's submissions fall short in two ways. While Plaintiff has submitted evidence suggesting that Defendants stole or misappropriated information, Plaintiff has failed to demonstrate that the information in question is properly characterized as a trade secret. Second, while Plaintiff has presented other evidence creating a genuine dispute whether it possessed trade secrets, Plaintiff has presented no evidence that Defendants stole or misappropriated such information.

A.    Dennis Dornbush and Robert Randolph Affidavits

Michigan law defines a trade secret as information: (1) that derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) regarding which, reasonable efforts have been taken to maintain its secrecy. *Ibid.* The definition of a trade secret under federal law is, practically speaking, indistinguishable. *See Ukrainian Future Credit Union v. Seikaly*, 2017 WL 5665960 at *8 (E.D. Mich., Nov. 27, 2017).

Plaintiff cannot, however, just assert in conclusory fashion that information is a trade secret. Instead, under both federal and state law, Plaintiff is obligated to identify an alleged trade secret clearly and specifically. *See, e.g., Bullock*, 2020 WL 1234893 at *7 (under Michigan law, an alleged trade secret must be identified "clearly, unambiguously, and with specificity"); *NEXT Payment Solutions, Inc. v. Clearesult Consulting, Inc.*, 2020 WL 2836778 at *10 (N.D. Ill., May 31, 2020) (federal law requires a plaintiff to do more than identify a broad category of information "and then invite the court to hunt through the details in search of items" satisfying the definition of a trade secret); *Capricorn Management Systems, Inc. v. Government Employees Ins. Co.*, 2019 WL 5694256 at (E.D.N.Y., July 22, 2019) (under federal law, a plaintiff must articulate its "[trade] secret with sufficient specificity that its protectability can be assessed. . .").

Plaintiff has failed to identify in its amended complaint the purported trade secrets that Defendants allegedly stole or misappropriated. Instead, Plaintiff merely asserts that the "information" located on the computer to which Oliver was afforded access contained trade secrets. (ECF No. 6, PageID.41, 44). In support of its argument that the information on the computer in question constitutes trade secrets, Plaintiff has submitted affidavits executed by two Skywatcher representatives.

Dennis Dornbush, who "assist[s] with [Skywatcher's] financial operations," asserts that "[w]hen Oliver returned the computer, I noticed that it was missing data, emails, quotations, communications, quoting software, operations management programs, and other contents." (ECF No. 78-3, PageID.418-19). Robert Randolph, the majority owner of Skywatcher, asserts that "[w]hen Oliver returned the computer, which he had wiped, to me, I believe that it was missing data, programs, and communications that had previously been on the computer." (ECF No. 78-4, PageID.422-23).

These affidavits are insufficient. Dornbush and Randolph fail to describe with any specificity the information which allegedly constitutes a trade secret. They have presented no evidence that (1) Skywatcher derived economic value from the information in question, (2) that such information was not properly ascertainable by others, or (3) that Skywatcher undertook reasonable efforts to maintain the secrecy of the information in question. Simply put, even if the assertions in these affidavits are interpreted in Plaintiffs' favor, no reasonable juror could find that the information

in question is properly characterized as a trade secret under federal or Michigan law.

B.     Plaintiff's Discovery Responses

Before being dismissed from this action, Standard Solar submitted to Plaintiff a series of interrogatories, the responses to which have been submitted by Plaintiff. (ECF No. 78-10, PageID.456-77).    In its responses, Plaintiff identifies several categories of information which it argues constitutes trade secrets.    (*Id.*, PageID.460-72).    While some of the information identified by Plaintiff hardly qualifies as a trade secret, there is at least a question of fact whether other information is properly characterized as a trade secret.[1]    Plaintiff has failed, however, to present any evidence that any of the information identified in its discovery responses was stolen or misappropriated by either Defendant.

In simple terms, Plaintiff has presented no evidence connecting the vague allegations in the Dornbush and Randolph affidavits with the discovery responses it provided to Standard Solar.  While the Court recognizes that it must interpret the evidence in Plaintiff's favor, Plaintiff has identified no authority that permits the Court to overlook a party's failure to present evidence regarding a fundamental element of an alleged claim.  Rather, as noted above, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the

---

[1] For example, Plaintiff asserts that emails, texts, correspondence, advertising materials constitute trade secrets.  Plaintiff has failed to demonstrate that such information constitutes trade secrets.  On the other hand, information regarding Plaintiff's profitability, how Plaintiff prices its products, and how its products are installed may very well constitute trade secrets.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Accordingly, Defendants Agathon and Oliver are entitled to summary judgment as to Count V and Defendant Oliver is entitled to summary judgment as to Count IX. The Court, however, denies Defendant Oliver's motion for attorney fees.

Where a party successfully defends a claim of misappropriation of trade secrets, asserted in "bad faith," the court may award "reasonable attorney's fees to the prevailing party." Mich. Comp. Laws § 445.1905. Federal law contains a similar provision. 18 U.S.C. § 1836(A)(3)(D). Defendant Oliver argues that the Court should award him reasonable attorney fees pursuant to these provisions.

While Defendant succinctly articulates why Plaintiff's trade secrets claims are without merit, Defendant has presented no evidence in support of his argument that Plaintiff asserted such in bad faith. In this respect, Defendant's request is no less speculative than the claims against which he defended. Accordingly, Defendant Oliver's motion for attorney fees is denied. *See, e.g., Facility Group of Michigan, Inc. v. Office Furniture Services, Inc.*, 2003 WL 22872138 at *2 (Mich. Ct. App., Dec. 4, 2003) (recognizing, in the context of a motion for fees under Mich. Comp. Laws § 445.1905, a clear distinction between weak claims and claims asserted in bad faith).

### III.  **Breach of Contract**   (Count VI)

In Count VI, Plaintiff alleges that Defendant Oliver executed a non-competition agreement (NCA) with Skywatcher. Plaintiff asserts that by failing to abide by the terms of his NCA, Oliver committed breach of contract. To prevail on its breach of contract claim, Plaintiff must establish the following: (1) there existed a contract between Skywatcher and Oliver; (2) Oliver breached the contract; and (3) the breach caused Skywatcher to suffer damages. *See Bank of America, NA v. First American Title Ins. Co.*, 878 N.W.2d 816, 829 (Mich. 2016). Defendant argues that he is entitled to relief because Plaintiff cannot establish the existence of a contract or establish that such was breached. The Court agrees.

Plaintiff has failed to produce a copy of the contract which Oliver allegedly executed. While Plaintiff alleges in its amended complaint that Oliver stole the executed contract from Skywatcher's Grand Rapids office, Plaintiff has presented no evidence supporting this allegation. Instead, in support of its claim, Plaintiff relies on the following: (1) Robert Randolph's affidavit; (2) Dennis Dornbush's affidavit; (3) copies of NCAs executed by other Skywatcher employees; and (4) a purported draft of the 2019 compensation plan Plaintiff attempted to negotiate with Defendant. None of this evidence advances Plaintiff's cause.

Randolph asserts in his affidavit that, on or about December 19, 2018, he asked Oliver to execute an NCA as part of his continued employment with Skywatcher. (ECF No. 78-4, PageID.422-23). According to Randolph, Oliver later signed the proposed NCA after which Randolph filed a copy "in a filing cabinet" in Skywatcher's

Grand Rapids office. (ECF No. 78-4, PageID.423). Dornbush asserts that a "few days" after the December 19, 2018 meeting, Oliver informed him that he had, in fact, executed Skywatcher's 2019 Compensation Plan, which included an NCA. (ECF No. 78-3, PageID.418-19). Notably, neither Dornbush nor Randolph present any evidence as to the terms and conditions of the NCA that Oliver purportedly executed.

Randolph asserts that other Skywatcher sales representatives have executed NCAs. (ECF No. 78-4, PageID.423). Plaintiff has even attached copies of two compensation agreements executed by other Skywatcher employees. (ECF No. 78-5, 78-6, PageID.425-35). While these two agreements each contain noncompetition provisions, albeit with differing terms, Plaintiff has presented no evidence that the NCA Defendant Oliver allegedly executed contained the same or similar terms.

Finally, Plaintiff submits a copy of what it argues is a draft of the 2019 compensation plan it attempted to negotiate with Defendant Oliver. (ECF No. 78-8, PageID.439-40). Plaintiff has presented no evidence that the terms and conditions of the NCA which Oliver allegedly executed were identical or similar to the terms of the submitted draft agreement. But, even if the Court were to assume that Oliver executed a contract identical to the draft submitted by Plaintiff, such still fails to advance Plaintiff's position.

Paragraph 7 of this draft agreement provides that "[t]his employment arrangement requires [Oliver] to sign the company's non-complete (sic) agreement . . ." (ECF No. 78-8, PageID.439). While paragraph 7 appears to articulate certain terms and provisions regarding the non-compete agreement, by its

very terms paragraph 7 expressly contemplates that the non-compete agreement is contained in a separate document. Plaintiff has presented no evidence regarding this document, the terms and conditions articulated therein, or that Oliver ever executed such.

Simply put, even if the Court assumes that Plaintiff has presented evidence that Defendant Oliver executed an NCA, Plaintiff has failed to present any evidence regarding the terms and conditions of any such agreement. By failing to present any evidence regarding the terms and conditions of any such NCA, Plaintiff cannot possibly demonstrate that Oliver breached such. Accordingly, Defendant Oliver is entitled to summary judgment as to Count VI.

**IV.    Tortious Interference with Contract**   (Count III)

In Count III, Plaintiff alleges that Defendant Agathon tortiously interfered with the NCA between Plaintiff and Defendant Oliver. To prevail on this claim, Plaintiff must establish the following: (1) the existence of a contract; (2) a breach of the contract; and (3) an unjustified instigation of the breach by the defendant. *See Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). For the reasons discussed in the preceding section, Plaintiff cannot prevail on the first two elements of this claim. Accordingly, Defendant Agathon is entitled to summary judgment as to Count III.

## V.     Unjust Enrichment (Count IV)

In Count IV, Plaintiff alleges that Defendants Oliver and Agathon, by utilizing information improperly obtained from Plaintiff, have unjustly enriched themselves. Specifically, Plaintiff alleges that, while employed by Skywatcher, Oliver "benefitted from Plaintiff sharing its knowledge of the business industry of solar energy generation and solar panel installation," including "documents, applications, customer information, trade secrets, and marketing programs Plaintiff developed." Plaintiff alleges that, "before resigning," Oliver began sharing with Standard Solar information he learned while employed with Skywatcher. Plaintiff further alleges that after resigning from Skywatcher, Oliver shared with Agathon information he learned while employed with Skywatcher.

To prevail on a claim of unjust enrichment, Plaintiff must establish two elements: (1) Defendant received a benefit from Plaintiff; and (2) Defendant's retention of that benefit is inequitable to Plaintiff. *See Meisner Law Group PC v. Weston Downs Condominium Assoc.*, 909 N.W.2d 890, 900 (Mich. Ct. App. 2017). Unjust enrichment is an equitable claim premised on the theory that the Court will "imply a contract to prevent the unjust enrichment of another party." *Landstar Express America, Inc. v. Nexteer Automotive Corp.*, 900 N.W.2d 650, 657 (Mich. Ct. App. 2017). The Court can imply the existence of a contract, however, only if there does not exist an express contract covering the subject matter in question. *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903 (Mich. Ct. App. 2006).

Defendants argue that Plaintiff cannot maintain its unjust enrichment claim because there existed a contract between the parties. Specifically, Defendants point to the 2018 Compensation Agreement that Oliver executed with Skywatcher. (ECF No. 72-1, PageID.361). It is not clear, however, that this contract concerned the subject matter of Plaintiff's unjust enrichment claim, particularly given that this contract did not contain a non-competition clause. Furthermore, part of Plaintiff's unjust enrichment claims concern conduct that allegedly occurred after this contract expired of its own terms. Plaintiff's unjust enrichment claims fail for a more fundamental reason, however. Plaintiff has failed to present any evidence that Defendants obtained from Plaintiff a benefit that is inequitable for them to retain.

    A.    Standard Solar

Plaintiff alleges that Oliver, before resigning from Skywatcher, shared with Standard Solar information he learned while employed with Skywatcher. Plaintiff has presented no evidence to support this allegation. In response to the present motion, Plaintiff has submitted two items, neither of which advance Plaintiff's cause.

First, Plaintiff cites to a May 17, 2019, email from Ed Rivet II to Robert Randolph. (ECF No. 78-10, PageID.449-50). In this email, Rivet recounts a January 14, 2019, encounter he had with Defendant Oliver and Daryl Pilon of Standard Solar. According to Rivet, Oliver informed him that he recently resigned from Skywatcher and that he and Pilon were presently "on their way to a meeting." Rivet further stated, however, that neither Oliver nor Pilon provided any information regarding with whom they were meeting or the subject matter of their meeting.

Second, Plaintiff submitted its responses to discovery requests from Standard Solar. In its responses, Plaintiff asserts that Oliver, prior to resigning from Skywatcher, met on at least one occasion with representatives of Skywatcher and Standard Solar. (ECF No. 78-10, PageID.473-76). Plaintiff also references the conversation Ed Rivet II had with Oliver and Pilon on January 14, 2019. (*Id.*).

This evidence, however, establishes nothing more than: (1) Oliver, while still employed by Skywatcher, met on an unknown date with a representative of Standard Solar, and (2) Oliver associated with a representative of Standard Solar following his resignation from Skywatcher. Plaintiff has failed, however, to present any evidence that during these, or any other encounters, Oliver provided Standard Solar with any information belonging to, or derived during his employment with, Skywatcher. Simply put, with respect to this particular claim, Plaintiff has presented nothing more than unfounded speculation. Accordingly, as for Plaintiff's claim that Oliver, prior to resigning from Skywatcher, shared with Standard Solar information he learned during his employment with Skywatcher, Defendants are entitled to summary judgment.

B. Oliver and Agathon

Plaintiff also alleges that, after resigning from Skywatcher, Oliver and Agathon improperly used information that Oliver learned while employed with Skywatcher. Again, Plaintiff has presented no evidence in support of this claim. Plaintiff cannot establish that Oliver was subject to any non-competition limitations following his resignation from Skywatcher. Plaintiff has likewise failed to establish

that Defendants stole, misappropriated, or otherwise improperly obtained or used any information Oliver obtained from, or learned during his employment with, Skywatcher. Accordingly, as for Plaintiff's claim that Oliver, after resigning from Skywatcher, shared with Agathon, or otherwise improperly utilized, information he learned while employed with Skywatcher, Defendants are entitled to summary judgment.

## VI. Promissory Estoppel   (Count VIII)

In Count VIII of its amended complaint, Plaintiff asserts a claim of promissory estoppel against Defendant Oliver. Specifically, Plaintiff alleges that Oliver promised that he would not work for a competing solar energy company and that this promise induced Plaintiff to employ Oliver. This claim fails because Plaintiff has presented no evidence that Oliver, through execution of an NCA or otherwise, ever promised that he would not work for another solar energy company. *See Zaremba Equipment, Inc. v. Harco National Ins. Co.*, 761 N.W.2d 151, 166 (Mich. Ct. App. 2008). Accordingly, with respect to Plaintiff's promissory estoppel claim, Oliver is entitled to summary judgment.

## VII. Conversion   (Count II)

In Count II, Plaintiff alleges that Defendant Oliver, by instructing Comprenew to alter his computer and delete information therefrom, unlawfully converted Plaintiff's property. Plaintiff further asserts that Oliver unlawfully converted Plaintiff's "files and correspondence" by stealing them from Plaintiff's offices.

Plaintiff alleges that Oliver violated Michigan Compiled Laws 600.2919a(1)(a).[2] To prevail on its statutory conversion claim, Plaintiff must establish that Oliver stole, embezzled, or converted Plaintiff's property to his own use. *See Howard v. National City Mortgage*, 2016 WL 146104 (Mich. Ct. App., Jan. 12, 2016) (quoting *Aroma Wines*, 871 N.W.2d at 141-48 and Mich. Comp. Laws § 600.2919a(1)(a)).

Plaintiff's two claims fail for different reasons. With respect to the claim that Oliver stole property from Skywatcher's offices, Plaintiff has simply presented no evidence supporting such. As for the claim regarding the information on Oliver's computer, as detailed herein, Plaintiff has presented no evidence that Oliver improperly used such after resigning from Skywatcher. Accordingly, with respect to Plaintiff's conversion claims, Oliver is entitled to summary judgment.

## VIII. Tortious Interference with Business Relationship   (Count VII)

In Count VII of its amended complaint, Plaintiff alleges that Defendant Agathon tortiously interfered with the business relationship between Plaintiff and Defendant Oliver. Defendant argues that it is entitled to summary judgment as to this claim. In response, Plaintiff states that it "will not address" this argument and "will not defend" its claim because it "intends to dismiss this claim." (ECF No. 78, PageID.400 n.5). Finding that Plaintiff has abandoned Count VII, the Court finds

---

[2] Michigan law recognizes both common law and statutory claims of conversion. *See Aroma Wines & Equip., Inc. v. Columbian Distribution Services, Inc.*, 871 N.W.2d 136, 138 (Mich. 2015). The two causes of action, however, are "not coextensive." *Ibid.* By explicitly asserting that its conversion claim arises under Michigan statute, and making no reference to common law, the Court finds that Plaintiff has not asserted a common law conversion claim.

that Defendant Agathon is entitled to summary judgment as to Count VII.

## CONCLUSION

For the reasons articulated herein, Defendants' Motion for Summary Judgment (ECF No. 71) is granted in part and denied in part and this action terminated.  Specifically, Defendants' motion is granted except as to Defendant Oliver's request for attorney's fees, which is denied.  An Order consistent with this Opinion will enter.

Date:  August 20, 2020               /s/ Phillip J. Green               
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge